# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

|   |   |
|---|---|
| **BEN ELKINGTON,** | |
| **Plaintiff,** | Case No. 4:20-cv-00317-CRK |
| v. | |
| **DESERET MUTUAL BENEFIT ADMINISTRATORS INSURANCE COMPANY,** | **MEMORANDUM DECISION AND ORDER** |
| **Defendant.** | |

## INTRODUCTION

Before the court are Plaintiff, Ben Elkington's ("Elkington" or "Plaintiff"), and Defendant, Deseret Mutual Benefit Administrators Insurance Company's ("DMBA" or "Defendant"), cross motions for summary judgment. See Pl. [Elkington's] Memo Supp. Mot. for Summ. J., Feb. 16, 2021, Dkt. 28 ("Pl.'s Mot."); Def. [DMBA's] Mot. for Summ. J., Feb. 16, 2021, Dkt. 29 ("Def.'s Mot."). The parties dispute Plaintiff's eligibility for long-term benefits under Plaintiff's disability plan. Plaintiff claims his health conditions prevent him from working in any occupation, rendering him totally disabled as defined by the disability plan, and eligible for long-term disability benefits. See Pl. [Elkington's] Memo Supp. Mot. for Summ. J. at 8–11, Feb. 16, 2021, Dkt. 28-1 ("Pl.'s Br."). DMBA on the other hand, argues that given the deferential standard, the court cannot substitute its judgment for DMBA's judgment and that it was justified in concluding, based on the record, that Plaintiff could engage in

**MEMORANDUM DECISION AND ORDER - 1**

sedentary work requiring limited walking or standing.  <u>See</u> Def. [DMBA's] Mot. for

Summ. J., Feb. 16, 2021, Dkt. 29-1 ("Def.'s Br.").

BACKGROUND

Plaintiff was enrolled in a plan under the Employee Retirement Income

Security Act of 1974 ("ERISA") through his job as a meeting house mechanic.  <u>See</u>

<u>generally</u> Administrative Record Supplement: Desert Healthcare Disability Income

Plan, Dec. 7, 2020, Dkt. 26-1 (the "Plan"); <u>see also</u> Administrative Record Exhibit A

(Part 2) ("Admin R. Part 2")[1] at Plaintiff's Job Description, DMBA00392, Aug. 31,

2020, Dkt. 18-2.  DMBA is the Plan administrator.  <u>See, e.g.</u>, Administrative Record

Exhibit A (Part 1) ("Admin R.") at Second-Level Appeal Denial, DMBA00001, Aug.

31, 2020, Dkt. 18-1 ("Second-Level Appeal Denial").  In order to be eligible under the

Plan, an employee "must have a Total Disability that lasts 45 continuous days or

more from the last day Actively-At-Work."  Plan at ¶ 2.02(a).  The Plan defines "Total

Disability" as "a disabling condition, due to Illness or Injury, which prohibits an

Eligible Employee from performing 70% of his duties of employment in his own

occupation during the first six months of disability."  <u>Id.</u> at ¶ 1.19.  "After six months,

[Total Disability] means the inability, due to Illness or injury, to earn 70% of an

Eligible Employee's pre-disability Income in any occupation in the national economy

for which the Eligible Employee is qualified by training and/or experience."  <u>Id.</u>

---

[1] DMBA filed the administrative record in this case as "Exhibit A (Part 1)" and
"Exhibit A (Part 2)".  The exhibits are consecutively Bates stamped.

Plaintiff last worked on May 16, 2018.  <u>See</u> Admin R. at DMBA Summary Detail Report, DMBA00109 ("DMBA Summary Report").  Plaintiff made a claim to DMBA for disability benefits on August 21, 2018, <u>see</u> Admin R. Part 2 at Plaintiff's Disability Application, DMBA00427–DMBA00441 ("Disability Application"), which DMBA received on September 4, 2018.  <u>See</u> Admin R. at DMBA Letter (to Plaintiff) 09/13/2018, DMBA00104–DMBA00105.  In Plaintiff's application, he avers that he is limited from working because his conditions—"restrictive lung [and] [atrial fibrillation]"—render him, "weak [and with] no stamina."  Disability Application at DMBA00430.  Plaintiff further indicates that he has an "arthritic knee from car accident [and] also [a] bad hip from bad knee."  <u>Id.</u> at DMBA00433.  In the physician's statement accompanying Plaintiff's claim, his doctor, Dr. Brady Cook, indicated that Plaintiff suffers from atrial fibrillation and "restrictive lung [disease,] causing decreased stamina, strength, limited walking or climbing."  <u>Id.</u> at DMBA00436.  Dr. Cook further states that Plaintiff "cannot walk far, climb stairs, frequent rests [are] necessary[,]" and that Plaintiff can never bend at the waist because of shortness of breath, and he can only occasionally lift or carry items up to 10 pounds.  <u>Id.</u> at DMBA00436, DMBA00438.  Dr. Cook concluded that given Plaintiff's condition it was "not likely" that Plaintiff could "reasonably be expected to participate in a vocational rehabilitation program[,]" that it was "unknown" when Plaintiff could be expected to return to work and that even with restrictions on "activity level, number of hours per day, days per week, etc." he believed Plaintiff could not return to work.  <u>Id.</u> at DMBA00437.

On October 11, 2018, DMBA informed Plaintiff that he would receive limited benefits as of July 1, 2018.[2] See Admin R. at DMBA Letter (to Plaintiff) 10/11/2018, DMBA00090–DMBA00092. DMBA notified Plaintiff that at the end of six months, on January 1, 2019, his application for benefits would be reviewed, and if he was able to perform another occupation as defined by the Plan, his benefits would cease. See id. at DMBA00091. Following a request from Plaintiff, see Disability Application at DMBA00430, DMBA also considered whether Plaintiff was eligible for long-term disability benefits under the policy. See Admin R. at DMBA Letter (to Plaintiff) 9/13/2018, DMBA00104–DMBA00105.

By two letters dated November 6, 2018, DMBA sought records from Dr. Patrick Gorman, Plaintiff's heart specialist, and Dr. Cook. See Admin R. at DMBA Letter (to Dr. Cook) 11/06/2018, DMBA00086–DMBA00087; Admin R. at DMBA Letter (to Dr. Gorman) 11/06/2018, DMBA00088–DMBA00089. By letter dated December 24, 2018, DMBA notified Plaintiff that it was requesting additional information from Dr. Gorman, directly. See Admin R. at DMBA Letter (to Plaintiff) 12/24/2018, DMBA00084–DMBA00085. Dr. Gorman submitted records describing his evaluation of Plaintiff's conditions and symptoms. See Admin R. Part 2 at Dr. Gorman Evaluation Notes 10/08/2018, DMBA00371–DMBA00373 ("Dr. Gorman Evaluation"). Although Dr. Gorman noted that Plaintiff suffered from a "known history of

---

[2] DMBA granted Plaintiff short-term benefits because it found that Plaintiff was totally disabled under the plan, meaning—for the first six months—that he was unable to perform 70 percent of the duties of his current occupation. See Admin R. at DMBA Letter (to Plaintiff) 10/11/2018, DMBA00090–DMBA00093.

persistent atrial fibrillation, [hypertension], [non-insulin-dependent diabetes], obstructive sleep apnea, and recurrent syncope" and that Plaintiff "also had some hematuria secondary to nephrolithiasis[,]" Dr. Gorman said that Plaintiff "denies any chest pain, [shortness of breath], orthopnea, [paroxysmal nocturnal dyspnea], palpitations, edema, claudication, or syncope." Id. at DMBA00371.

The Plan required that Plaintiff continue to be totally disabled after the initial six months of benefit payments in order to receive long-term disability. See Plan at ¶ 1.19 (after the first six months, the Plan's definition of totally disabled changes to require that the beneficiary be unable to engage in any employment, as opposed to being unable to engage in the beneficiary's current employment). Thus, as of January 1, 2019, DMBA was required to reassess Plaintiff's eligibility. Pursuant to this obligation, DMBA commissioned an Employability Analysis Report. See Admin R. Part 2 at Employability Analysis Report, DMBA00279–DMBA00300 ("Employability Analysis Report"). The report was completed by a Vocational Rehabilitation Clinical Case Manager, who concluded that there were jobs available that accommodated Plaintiff's limitations, including that he could only perform sedentary work. See Admin R. at DMBA Letter 01/29/2019, DMBA00075–DMBA00080 ("Denial of Benefits Letter").[3] DMBA notified Plaintiff of its conclusion that he did not meet the

---

[3] DMBA provided a "sample" list of occupations that it found Plaintiff to be qualified for, but clarified that the list was non-exhaustive. Denial of Benefits Letter at DMBA00077–DMBA00078. DMBA found that Plaintiff could work as a small products assembler for electrical components, a visual inspector for metal products, a packer of razors, an inspector and hand packer of pharmaceuticals, a plastic hospital products assembler, a hand packager of medical devices, an inspector and

requirements for long-term disability payments under the policy because he was not precluded from engaging in "any employment" and could assume full-time employment, citing the findings of the Employability Analysis Report. Denial of Benefits Letter at DMBA00075–DMBA00080. DMBA further explained that the positions noted in the Employability Analysis Report were identified based on Plaintiff's work history, educational background, and physical limitations, that the jobs all met or exceeded the income requirements under the plan, and they were reasonably available jobs in the national economy. See id. at DMBA00078. Finally, DMBA notified Plaintiff of his opportunity to appeal, the manner in which to do so, and that Plaintiff could request copies of any relevant documentation. See id. at DMBA00079–DMBA00080.[4]

---

hand packager of electronics, or a printed circuit board assembly worker. See id. at DMBA00078.

[4] In addition to providing the address for Plaintiff to send his appeal to, DMBA notified Plaintiff that:

> The Employee Retirement Income Security Act of 1974 (ERISA) gives you the right to appeal our decision and receive a full and fair review. You may appeal our decision even if you do not have new information to send to us. You are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to your claim. If you do not agree with our denial, in whole or in part, and you wish to appeal our decision, you or your authorized representative must write to us within one hundred eighty (180) days from the later of receipt of the letter or the end of benefits. Your appeal letter should be signed, dated and clearly state your position. Please include your printed or typed full name, Planholder, and at least the last four digits of your Social Security Number with your appeal letter (i.e. xxx-xx-1234). Along with your appeal letter, you may submit written comments, documents, records and other information related to your claim. If you would like us to consider information

On March 11, 2019, Plaintiff sent a letter to DMBA requesting an appeal of the denial of long-term disability benefits.  <u>See</u> Admin R. Part 2 at Plaintiff Letter (to DMBA) 03/11/2019, DMBA00277.  DMBA received the appeal request on March 20, 2019, and sent a response letter to Plaintiff on March 22, 2019 informing him that his appeal would be assigned to a "Specialist" who may contact him to obtain additional information.  <u>See</u> <u>id.</u> at DMBA Letter (to Plaintiff) 03/22/2019, DMBA00072.  DMBA sent Plaintiff's medical records to an independent physician, Dr. Louise Banks.  <u>See</u> DMBA Summary Report at DMBA00111–DMBA00112; Admin R. at Dr. Banks' Report, DMBA00234–DMBA00238 ("Dr. Banks' Report").  During the period of review, DMBA sent letters to Plaintiff notifying him of new information it reviewed pursuant to the appeal and notifying him that he had a reasonable opportunity to respond to the new information considered.  <u>See</u> Admin R. at DMBA Letters (to Plaintiff), DMBA00056–DMBA00069.[5]  On June 3, 2019, Dr.

---

pertaining to your Social Security Disability claim, please provide it to us as soon as possible.

Denial of Benefits Letter at DMBA00079.

[5] DMBA sent its initial letter on April 8, 2019, notifying Plaintiff that it had started to review his appeal, that it needed some additional information, particularly from his physician, Dr. Cook, and that if he wanted to submit any additional information for consideration he should do so.  <u>See</u> Admin R. at DMBA Letter (to Plaintiff) 04/08/2019, DMBA00068–DMBA00069.  On the same day, DMBA sent a letter to Dr. Cook directly requesting the needed information.  <u>See</u> Admin R. at DMBA Letter (to Dr. Cook) 04/08/2019, DMBA00066–DMBA00067.  On May 3, 2019, DMBA contacted Plaintiff again to notify him that it had not yet received the necessary information from Dr. Cook, and that the appeal could not proceed without the information.  <u>See</u> Admin R. at DMBA Letter (to Plaintiff) 05/03/2019, DMBA00064–DMBA00065.  On May 21, 2019, DMBA received the necessary information from Dr. Cook and so notified Plaintiff in a letter dated May 22, 2019.  <u>See</u> Admin R. at DMBA Letter (to Plaintiff) 05/21/2019, DMBA00062–DMBA00063.  On June 4, 2019, DMBA sent Plaintiff a list of all new or additional information that it considered pursuant to the

Banks concluded that Plaintiff was able to work, with "moderate restrictions." Dr. Banks' Report at DMBA00234–DMBA00238. Subsequently on July 9, 2019, Plaintiff had an appointment with Dr. Cook, after which Dr. Cook provided an updated medical analysis affirming Plaintiff's "mild restrictive lung disease" that Dr. Cook states is likely due to Plaintiff's body habitus. Admin R. at Dr. Cook Evaluation Notes 07/09/2019, DMBA00202–DMBA00209. Dr. Cook's July 9 visit notes continue to report limited mobility and shortness of breath. See id. On August 20, 2019, DMBA sent Plaintiff a letter notifying him that his appeal review had been completed and was denied. See Admin R. at DMBA Letter (to Plaintiff) 08/20/2019, DMBA00046–DMBA00053 ("Denial of Appeal Letter"). In the notice of denial, DMBA provided the reasons for the decision, namely that based on Plaintiff's medical records and Dr. Banks' assessment, Plaintiff was able to perform sedentary duties, such as those identified by the earlier employability analysis which DMBA considered remained

---

appeal, and informed Plaintiff that he was entitled, under ERISA, to a reasonable opportunity to respond to the information before DMBA reached its final decision. See Admin R. at DMBA Letter (to Plaintiff) 06/04/2019, DMBA00060–DMBA00061. On June 24, 2019, in response to a prior telephone conversation with Plaintiff, DMBA sent a letter stating that the review would resume once Plaintiff sent the additional information referenced in the telephone call (or in 23 days if Plaintiff did not respond in that time). See Admin R. at DMBA Letter (to Plaintiff) 06/24/2019, DMBA00058–DMBA00059. Plaintiff subsequently submitted additional documents on July 9 and 15, 2019, which DMBA confirmed would be added to the appeal review. See Admin R. at DMBA Letter (to Plaintiff) 07/10/2019, DMBA00057. Plaintiff submitted further documentation, and DMBA confirmed receipt in a July 16, 2019 letter. See Admin R. at DMBA Letter (to Plaintiff) 07/16/2019, DMBA00056. Finally, on July 24, 2019, DMBA sent Plaintiff an updated list of all new or additional information that it considered pursuant to the appeal, and informed Plaintiff that he was entitled, under ERISA, to a reasonable opportunity to respond to the information before DMBA reached its final decision. See Admin R. at DMBA Letter (to Plaintiff) 07/24/2019, DMBA00054–DMBA00055.

valid.  See id.  DMBA alerted Plaintiff that if he disagreed with the decision he could resubmit his appeal within 60 days to the Claims Review Committee ("CRC").  See id.  DMBA also notified Plaintiff as follows: "You are entitled to receive upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to this claim."  Denial of Appeal Letter at DMBA00052.

On September 27, 2019, Plaintiff wrote to DMBA notifying it that he would appeal DMBA's decision for a second time.  See Admin R. at Plaintiff Letter (to DMBA) 09/27/2019, DMBA00033.  On October 9, 2019, Dr. Cook provided an updated opinion, in which he continued to recommend that Plaintiff refrain from work activities.  See Admin R. at Dr. Cook Letter, DMBA00034.  On December 4, 2019, DMBA notified Plaintiff that it was extending the time to review his second appeal so that it could provide Plaintiff with a copy of the independent review being conducted, and provide him ample time to review and comment on the results of the independent review.  See Admin R. at DMBA Letter (to Plaintiff) 12/04/2019, DMBA00042.[6]  On December 20, 2019, a claim reviewer and medical doctor from MLS National Medical Evaluation Services, Dr. Lucien Parillo, provided a summary of Plaintiff's medical records, including Dr. Banks' opinion of the medical records, and consequent opinion about Plaintiff's file and Dr. Banks' review.  See Admin R. at Dr. Parillo Report, DMBA00035–DMBA00041 ("Dr. Parillo's Report").  Dr. Parillo

---

[6] DMBA attached a copy of the independent review to the letter and stated as follows: "[s]hould you wish to respond to Dr. Parillo's review or to provide additional documentation in support of your claims for benefits, please be advised that we must receive any additional information on or before January 4, 2019."  Admin R. at DMBA Letter (to Plaintiff) 12/04/2019, DMBA00042.

concluded that he did not see "any degree of functional impairment that is supported by the available medical evidence" including clinical examinations and diagnostic testing.  Dr. Parillo's Report at DMBA00039.  Dr. Parillo recognized that although Plaintiff was being treated for a number of medical conditions, "the physically debilitating effects of these diagnoses [have] not been objectively established."  Id. Consequently, although Dr. Parillo agreed with Dr. Banks' report more generally, he concluded that Plaintiff "does not require any degree of occupational restrictions or limitations for the time period under review."  Id.; cf. Dr. Banks' Report at DMBA00234–DMBA00238 (concluding that Plaintiff was able to work, with "moderate restrictions.").

On January 23, 2020, the CRC published an "Advocate Summary" detailing the Plan terms, review process and documentation and the CRC's opinion recommending denial of long-term disability benefits to Plaintiff.  See Admin R. at CRC Advocate Summary, DMBA00008–DMBA00021 ("CRC Advocate Summary"). On February 5, 2020, DMBA sent a letter notifying Plaintiff that his second-level appeal was denied and included relevant Plan provisions and a general list of the documents that DMBA reviewed in coming to its determination.  See Second-Level Appeal Denial at DMBA00001–DMBA00002.  In this communication, DMBA again notified Plaintiff that it could seek copies of the information underlying DMBA's decision, stating "[i]f you have any questions about the content of this response or would like a copy (provided at no cost) of any and/or all of the documents referenced above, you may contact DMBA."  Id. at DMBA00002.

On April 14, 2020, Plaintiff filed a summons and complaint in state court in Bingham County, Idaho.  See State Court Service Documents, Apr. 14, 2020, Dkt. 1-2 ("Summons & Compl.").  On June 23, 2020, pursuant to 28 U.S.C. §§ 1331, 1367, 1441, and 1446 (2018),[7] Defendant filed a notice of removal to the United States District Court for the District of Idaho, submitting that "[Plaintiff] expressly seeks relief pursuant to ERISA in his Complaint, and ERISA preempts any state law claims."  Notice of Removal by Def. [DMBA] at ¶ 6, June 23, 2020, Dkt. 1-1.  On June 30, 2020, Defendant filed its answer to Plaintiff's complaint.  See Answer to Compl., June 30, 2020, Dkt. 5.  The parties submitted the administrative record on August 30, 2020, see Admin R.; Admin R. Part 2, which the parties later supplemented with leave of the court.  See Plan; Order, Dec. 8, 2020, Dkt. 27.

On February 16, 2021, the parties submitted cross motions for summary judgment.  See Pl.'s Mot.; Def.'s Mot.  Each party filed a response to the opposing party's summary judgment motion on March 9, 2021.  See [Pl.'s] Reply Memo, Mar. 9, 2021, Dkt. 30 ("Pl.'s Resp."); [Def.'s] Memo of Points & Auth. Opp. Pl.'s Mot. for Summ. J., Mar. 9, 2021, Dkt. 31 ("Def.'s Resp.").  Plaintiff filed a reply to Defendant's response to Plaintiff's motion for summary judgment on March 18, 2021, see [Pl.'s] Memo Resp. to Def.'s Reply Br., Mar. 18, 2021, Dkt. 32 ("Pl.'s Reply"), and Defendant filed a reply to Plaintiff's response to Defendant's motion for summary judgment on March 23, 2021.  See Reply Memo of Points & Auth. Supp. Def.'s Mot. for Summ. J., Mar. 23, 2021, Dkt. 33.

---

[7] Further citations to Title 28 of the U.S. Code are to the 2018 edition.

**DISCUSSION**

## I.   STANDARD OF REVIEW

Summary judgment is generally appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  However, in ERISA cases, the Ninth Circuit has indicated that the district court is to apply either a de novo standard of review, or an abuse of discretion standard, depending on whether the "pension plan confers discretionary authority on a plan administrator to construe the terms of a pension plan and to determine benefit eligibility."  McDaniel v. Chevron Corp., 203 F.3d 1099, 1107 (2000) (citing Kearney v. Standard Ins. Co., 175 F.3d 1084, 1088–89 (9th Cir. 1999) (en banc); Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)).  Here, both parties agree that the Plan contains discretionary language, which indicates that the standard of review is abuse of discretion.  See Pl.'s Br. at 7; Def.'s Br. at 4.[8]

---

[8] Plaintiff states that the

> plan allows the administrative committee "the sole discretion and authority to control and manage the operation and administration of the plan [which grants] discretion to the committee to interpret the provisions of the plan, make findings of fact, correct errors, supply omissions, and determine the benefits payable under the plan."

Pl.'s Br. at 7.  Defendant states that "[i]n a section entitled 'Notification of Discretionary Authority,' the Plan states that 'Deseret Mutual has full discretionary authority to interpret the Plan and to determine eligibility[,]'" that "Deseret Mutual also has the sole right to construe the plan terms" and that "[a]ll Deseret Mutual decisions relating to plan terms or eligibility are binding and conclusive."  Def.'s Br. at 4.

Nonetheless, in this case Plaintiff claims that DMBA did not comply with the requirements of ERISA § 503, codified by 29 U.S.C. § 1133 (2018),[9] in particular 29 C.F.R. § 2560.503-1 (2018),[10] and that Plaintiff was thus denied the opportunity to fully present his claim.  See Pl.'s Br. at 8–10; Pl.'s Reply at 2–4.  The Ninth Circuit has recognized that in ERISA claims, courts may have to consider evidence outside of the record where there is a procedural irregularity in the administrative review. See Abatie v. Alta Health & Life Ins. Co, 458 F.3d 955, 973 (9th Cir. 2006) ("Abatie"). If the alleged procedural violations are severe, the court may review the determination de novo.  See id. at 971; see also Dayton v. HCA, Inc., 2008 WL 11349681 *4 ("Dayton").  Even if the violations are minor, "the court may take additional evidence when the irregularities have prevented full development of the administrative record. In that way the court may, in essence, recreate what the administrative record would have been had the procedure been correct."  Abatie, 458 F.3d at 973.  Plaintiff claims that the plan administrator's procedural violations require this court to now consider additional information in support of his claims, including additional factual allegations attested to by Plaintiff in a personal affidavit. See Pl.'s Br. at 11; see generally Affidavit of Ben Elkington, Feb. 16, 2021, Dkt. 28-2.

As a threshold matter, Defendant argues that any procedural challenges were not pled in Plaintiff's complaint, and therefore have been waived.  See Def.'s Resp. at 8.  Under the Federal Rules of Civil Procedure ("FRCP") a complaint must contain a

---

[9] Further citations to ERISA will be to the relevant provisions of Title 29 of the U.S. Code, 2018 edition.

[10] Further citations to the Code of Federal Regulations will be to the 2018 edition.

"a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a).  Moreover, under the FRCP "[p]leadings must be construed so as to do justice."  Fed. R. Civ. P. 8(e).  Within this framework, pleadings are to be construed liberally.  See In re Marino, 37 F.3d 1354, 1357 (9th Cir. 1994) ("In re Marino").  The purpose of pleadings is to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Id.

In "Count One," Plaintiff alleges that he was "incorrectly denied long-term disability benefits."  Summons & Compl. at Compl. ¶ 14.  Plaintiff specifically brings count one under ERISA, 29 U.S.C. § 1132(a)(1)(B).  See id. at Compl. ¶¶ 11–14.  Plaintiff's complaint broadly alleges that, under ERISA, he was improperly denied benefits owed under the policy, thus satisfying the requirement of a short and plain statement of relief.  See Fed. R. Civ. P. 8(a).  Given that Plaintiff broadly claimed entitlement to relief under ERISA, DMBA was on notice that Plaintiff sought relief for DMBA's alleged failure to comply with ERISA generally.  See In re Marino, 37 F.3d at 1357 (stating that the goal of pleadings is to give notice).  To find otherwise would be contrary to the principles that pleading requirements are to be construed liberally, and pleadings are to be construed so as to do justice.  See id.; Fed. R. Civ. P. 8(e).

Plaintiff alleges that he was denied the opportunity for a full and fair review, including by being denied necessary information from DMBA about how to perfect his claim.  See Pl.'s Reply at 2–3.  Plaintiff states that if not for the procedural irregularities, DMBA "would have recognized that the symptoms suffered by

[Plaintiff] were easily documented." Pl.'s Br. at 10. DMBA, on the other hand, states that it "either fully complied with, or at a minimum substantially complied with, the applicable regulations." Def.'s Resp. at 14–15.

ERISA requires:

> In accordance with regulations of the Secretary, every employee benefit plan shall—
> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133. Moreover, 29 C.F.R. § 2560.503-1 supplements 29 U.S.C. § 1133, and "sets forth minimum requirements for employee benefit plan procedures pertaining to claims for benefits by participants and beneficiaries." 29 C.F.R. § 2560.503-1(a). Further, the regulations require that the benefit determination include "[a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary[]" and "[i]n the case of an adverse benefit determination with respect to disability benefits, the notification shall be provided in a culturally and linguistically appropriate manner[]" as defined by subsection 1(o) of the regulation. 29 C.F.R. § 2560.503-1(g)(1)(iii), (viii). Whether a determination is presented in a culturally and linguistically appropriate manner refers to the plan administrators' provision of information and materials to non-English language speakers, when required. See 29 C.F.R. § 2560.503-1(o).

Plaintiff alleges that DMBA failed to direct the Plaintiff in any meaningful way as to how he should perfect his appeal and failed to give the plaintiff any practical opportunity to review or rebut the medical opinions. See Pl.'s Resp. at 2–3. In particular, Plaintiff invokes relevant regulations stating that a denial of benefits must be accompanied by "(iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary." 29 C.F.R. § 2560.503-1(g)(1)(iii); see also Pl.'s Br. at 8 & Pl.'s Resp. at 3–4. Plaintiff reasons that, under the regulations, DMBA was obliged to inform Plaintiff that he could hire his own vocational or medical experts to refute DMBA's findings. See Pl.'s Resp. at 3–4. Likewise, Plaintiff asserts that the regulations require DMBA to supply Plaintiff with copies of all reports. See id.

Plaintiff's argument that DMBA failed to inform Plaintiff how he could perfect his appeal is not persuasive. A beneficiary's claim has been perfected when the claim file includes all of the information needed for the plan administrator to make a determination about entitlement to benefits. See Podolan v. Aetna Life Ins. Co., 909 F. Supp. 1378, 1390 (D. Idaho 1995) (explaining a claim is perfected when the administrator has the materials necessary to decide a claim and the regulations do not require the administrator to inform a claimant of what would be needed for a claim to succeed). Here, Plaintiff and his doctors received and acted upon DMBA's requests for information, showing that there was a meaningful exchange about what Plaintiff needed to do to perfect his claim. For example, based on information

Plaintiff furnished to DMBA, DMBA contacted Plaintiff to alert him that it needed additional information from Dr. Cook to be able to make a decision about Plaintiff's appeal, and DMBA contacted Dr. Cook directly for such information. See Admin R. at DMBA Letter (to Plaintiff) 04/08/2019, DMBA00068–DMBA00069; Admin R. at DMBA Letter (to Dr. Cook) 04/08/2019, DMBA00066–DMBA00067. When DMBA did not hear back from Plaintiff, it followed up with Plaintiff in a second effort to obtain the information that DMBA saw as missing from Plaintiff's file. See Admin R. at DMBA Letter (to Plaintiff) 05/03/2019, DMBA00064–DMBA00065. Throughout the review process, DMBA communicated with Plaintiff and his physicians about the documents that DMBA needed to complete Plaintiff's file and fully review Plaintiff's claim. See also, e.g., Admin R. at DMBA Letter 06/24/2019, DMBA00058–DMBA00059.

Further, DMBA did communicate with Plaintiff regarding his ability to challenge its decision with any information.[11] Although Plaintiff claims that he should have received copies of the medical opinions and vocational reports, Plaintiff was specifically notified—in DMBA's original letter denying long-term benefits, in DMBA's letter denying Plaintiff's appeal, and in DMBA's letter denying Plaintiff's second-level appeal—that he was "entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information

---

[11] The record reflects that DMBA did not complete its review of Plaintiff's claim in the time provided for by the plan because the parties exchanged new information and added documents to the Plaintiff's claim file, after which DMBA was obligated to (and did), in each instance, provide Plaintiff with a reasonable time to respond and comment. See Admin R. at DMBA Letter (to Plaintiff) 12/04/2019, DMBA00042.

relevant to your claim."  Second-Level Appeal Denial at DMBA00001; Denial of Appeal Letter at DMBA00046–DMBA00053; Denial of Benefits Letter at DMBA00079–DMBA00080.  Therefore, Plaintiff's claim that DMBA failed to inform Plaintiff of what it needed to do to perfect or otherwise provided a full and fair review is not persuasive.  Plaintiff perfected his claim when he submitted the necessary documentation to seek benefits.  However, DMBA did not find that benefits were warranted.  Plaintiff was informed that he could request copies of any reports or materials and appeal the decision with additional evidence or explanation.  See Second-Level Appeal Denial at DMBA00001; Denial of Appeal Letter at DMBA00046–DMBA00053; Denial of Benefits Letter at DMBA00079–DMBA00080.[12]  There were no further procedural irregularities that would warrant de novo review or the submission of evidence outside of the record.

## II.    DENIAL OF BENEFITS UNDER ERISA

Defendant argues that it is entitled to summary judgment because the record demonstrates that Plaintiff's disability does not qualify under the Plan as one that is eligible for payments beyond six months.  See Def.'s Br. at 3.  Plaintiff argues that the record supports that he was disabled, qualifying him for long-term benefits under the Plan.  See Pl.'s Br. at 11.  In the alternative, Plaintiff argues that if the court does not have enough evidence to grant Plaintiff summary judgment on this point, then the court should "order a more complete analysis of [Plaintiff's] disability by virtue of

---

[12] Plaintiff also alleges that DMBA "merely sought opinions from experts who were expected to provide opinions that would allow it to deny liability."  Pl.'s Br. at 10.  However, Plaintiff does not offer any support for this claim.

allowing him to attend a functional capacity evaluation and gather medical records which will be submitted to another vocational expert." Id.

Since there were neither procedural irregularities that were severe enough to alter the standard of review, nor procedural irregularities to weigh against DMBA under an abuse of discretion standard, the court reviews DMBA's decision deferentially, looking only to see whether it abused its discretion. See Abatie, 458 F.3d at 971–73. Under the Plan, to be eligible for benefits for the first six months, the claimant must be disabled from completing his/her current occupation; after six months the claimant must be disabled from completing any occupation in order to receive benefits. See Plan at ¶¶ 1.19, 2.02(b). Being disabled from completing any occupation is defined in the plan as "the inability, due to Illness or injury, to earn 70% of an Eligible Employee's pre-disability Income in any occupation in the national economy for which the Eligible Employee is qualified by training and/or experience." Plan at ¶ 1.19. DMBA found that Plaintiff was not disabled from completing "any occupation" because, despite Plaintiff's conditions that DMBA acknowledges limit his ability to work in his prior field, there are jobs that "are sedentary and do not require more than occasional standing and walking or lifting more than 10 pounds occasionally, and the salaries meet the required earnings potential of 70% of your pre-disability income." CRC Advocate Summary at DMBA00019.

DMBA's findings and decision are supported by the record. DMBA considered the Plaintiff's claims that he was unable to work because he was overweight, had difficulty breathing, had a history of heart problems and had knee, hip and back pain,

all of which necessitated restrictions on his physical mobility, and further impacted his stamina such that he needed frequent rest throughout the day. See Disability Application. An independent doctor, Dr. Banks, reviewed Plaintiff's claim file and considered whether and to what extent Plaintiff could engage in any occupation. See Dr. Banks' Report at DMBA00234–DMBA00238. Dr. Banks ultimately agreed that Plaintiff needs to limit physical activity, i.e. by standing only occasionally and for no more than 20 minutes at a time, never squatting, and walking or climbing stairs only in a limited and self-paced manner, among other limitations. See id. at DMBA00236–DMBA00237. On the other hand, Dr. Banks disagreed with Plaintiff's physician Dr. Cook regarding certain suggested limitations. For example, Dr. Banks states that she disagrees that Plaintiff cannot lift 20 pounds or carry 10 pounds, and that he cannot bend at all—according to Dr. Banks, Plaintiff could lift 10 pounds frequently, and 20 pounds occasionally, and she stated that Plaintiff could bend, but no more than twice hourly. See id. at DMBA00236, DMBA00238. Dr. Banks opined that, overall, "[Plaintiff's] age, body habitus, and moderate cardiac history are consistent with a need for moderate work activity restrictions." Id. at DMBA00238. Meanwhile, Dr. Banks found that Plaintiff suffers no cognitive problems. See id. Thus, Dr. Banks ultimately concluded that Plaintiff is capable of "sustain[ing] work activity within the parameters recommended [in Dr. Banks' report] for 8 hour shifts/ 40 hour weeks." Id. at DMBA00238. As support for her conclusions, Dr. Banks highlighted, among other

things,[13] that neither of Plaintiff's physicians imposed restrictions on daily activities, Plaintiff did not have assisted devices for ambulation and despite complaints about knee, back, etc. pain, neither doctor prescribed an increase in Plaintiff's pain treatment. See id. at DMBA00238.

Pursuant to Plaintiff's second-level appeal, a separate doctor, Dr. Parillo, evaluated Plaintiff's claim file and conducted a peer-review of Dr. Banks' assessment. See Dr. Parillo's Report at DMBA00035–DMBA00040. Dr. Parillo generally agreed with Dr. Banks' assessment, however he concluded that "the claimant does not require any degree of occupational restrictions or limitations for the time period under review." Id. at DMBA00039. While Dr. Parillo recognized that Plaintiff has been treated for a number of conditions, his opinion is that "the physically debilitating effects of these diagnoses has not been objectively established[,]" through clinical examination or diagnostic testing. Id.

Based on Plaintiff's claim, records, and Dr. Banks' and Dr. Parillo's conclusions, DMBA concluded that Plaintiff could perform light, sedentary work. See id. at DMBA00112. DMBA's employability analysis, prepared by a vocational expert, was intended to identify possible jobs that met the policy requirements and were within Plaintiff's capabilities (i.e., taking into account his limitations). See Denial of Benefits Letter at DMBA00077–DMBA00078. The vocational expert identified a

_____

[13] Dr. Banks also specifically talks about Plaintiff's medical records and points to irregularities including restrictive lung disease in the primary diagnosis, but that "a pulmonary [computed tomography] angiogram of May 18, 2018 found no evidence of pulmonary emboli, and lung parenchyma is notable only for some bibasilar atelectasis." Dr. Banks' Report at DMBA00235–DMBA00236.

number of positions, "exist[ing] in reasonable numbers within the national economy," including a small products assembler for electrical components, a visual inspector of metal products and an inspector and packer of pharmaceuticals, among others. Id. The requirements for the jobs the vocational expert identified account for the limitations that Dr. Cook set out for Plaintiff. See, e.g., Disability Application at DMBA00436–DMBA00438 (Plaintiff cannot walk far or climb stairs); see also, e.g., id. at DMBA00436, DMBA00438 (Plaintiff cannot lift or carry items over 10 pounds); see also Denial of Benefits Letter at DMBA00075–DMBA00080; Employability Analysis Report at DMBA00279–DMBA00300. Moreover, Dr. Gorman noted as part of his treatment plan that Plaintiff is "[u]nrestricted [as to] activity." Dr. Gorman Evaluation at DMBA00372. Based on the evidence supplied by Plaintiff's own doctors, the assessment of independent third-party physicians Dr. Banks and Dr. Parillo, and the vocational report commissioned by DMBA, which accommodates Plaintiff's physical limitations, the court cannot say that DMBA abused its discretion in denying Plaintiff long-term disability benefits.

## III.    BREACH OF CONTRACT

Plaintiff also claims that DMBA breached its contract (the Plan) when it wrongfully denied Plaintiff long-term disability benefits. See Summons & Compl. at Compl. ¶¶ 15–18. Defendant argues that the court should dismiss Plaintiff's contract claim because it is preempted by ERISA. See Def.'s Resp. at 18–19.

"[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." <u>Aetna Health Inc. v. Davila</u>, 542 U.S. 200, 209 (2004). "[29 U.S.C. § 1132(a)] 'sets forth a comprehensive civil enforcement scheme' that completely preempts state-law 'causes of action within the scope of these civil enforcement provisions[.]'" <u>Fossen v. Blue Cross & Blue Shield of Mont.</u>, 660 F.3d 1102, 1107 (9th Cir. 2011) ("<u>Fossen</u>"). There is a two-part test used to determine whether a state law claim is preempted by 29 U.S.C. § 1132(a); both parts of the test must be met for preemption to apply. <u>See, e.g.</u>, <u>id.</u> at 1107–08. First, the court looks to see whether "an individual, at some point in time, could have brought the claim under [29 U.S.C. § 1132(a)(1)(B).]" <u>Id.</u> at 1108. Second, a state law cause of action is preempted "where there is no other independent legal duty that is implicated by a defendant's actions," i.e., the plan administrator's duties to the complaining party arise solely from the ERISA plan. <u>Id.</u> For example, where trustees of a pension plan had a duty to remit money to a pension fund based on a separate contract, not an ERISA plan, the second prong of the test requiring that there be no independent legal duty for preemption to apply was not met. <u>See</u> <u>Trs. of the U.A. Local 38 Defined Benefit Pension Plan v. Trs. of the Plumbers & Pipe Fitters Nat'l Pension Fund</u>, 678 Fed. Appx. 478, 479–80 (9th Cir. 2017) ("<u>Local 38 Pension Plan</u>").

Plaintiff's breach of contract claim is the same as his claim under 29 U.S.C. § 1132, thus satisfying the first prong of the two-part test for preemption. <u>See</u> <u>Fossen</u>, 660 F.3d at 1108. Moreover, there is no independent legal duty that gives rise to a

separate cause of action for breach of contract.  Plaintiff does not allege the existence of any other agreement, and he only claims breach of contract against DMBA for matters pursuant to its fiduciary obligations under the Plan, and not pursuant to an independent legal obligation.  Plaintiff's state law claim is thus preempted by ERISA, and is consequently dismissed.

## IV.  ATTORNEY FEES

Plaintiff requests that this court award him attorney fees and costs.  <u>See</u> Summons & Compl. at Compl. ¶ 20.  Under the Idaho Local District Civil Rules, "[u]nless a statute or a court order provides otherwise, a party claiming the right to allowance of attorney fees may file and serve a motion for such allowance within fourteen (14) days after entry of judgment."  Idaho Loc. Dist. Civ. R. 54.2(b).  ERISA also provides that "[i]n any action under this title (other than an action described in paragraph 2) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable [attorney fees] and costs of action to either party."  29 U.S.C. § 1132(g)(1)."  However, the Ninth Circuit Court of Appeals has clarified that "[t]o award [attorney] fees under ERISA, a court must find that the moving party achieved 'some degree of success on the merits.'"  <u>Gorbacheva v. Abbott Labs. Extended Disability Plan</u>, 794 Fed. Appx. 590, 593–94 (citations omitted). Plaintiff did not achieve "some degree of success on the merits," <u>id.</u>, thus this court denies Plaintiff's request for attorney fees.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is granted, and therefore Plaintiff's ERISA claims are denied. For the reasons stated, Plaintiff's breach of contract claim is also denied. The Court will enter a separate judgment in accordance with FRCP 58.

 /s/ Claire R. Kelly 
Claire R. Kelly, Judge[*]

Dated:        May 7, 2021

---

[*] Judge Claire R. Kelly, of the United States Court of International Trade, sitting by designation.